UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA

| | | |
|---|---|---|
| **BRADLEY DWAYNE HANON,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | |
| | § | **Docket No. 1:10-CV-209** |
| **CITY OF RED BANK,** | § | |
| | § | **Collier / Carter** |
| **MAYOR JOE GLASSCOCK,** | § | |
| **In his official capacity as an agent** | § | |
| **and Mayor of City of Red Bank, Tennessee,** | § | |
| **and in his individual capacity,** | § | |
| | § | |
| **FORMER CHIEF OF POLICE** | § | |
| **LARRY SNEED,** | § | |
| **In his official capacity as an agent and** | § | |
| **Chief of Police for the City of Red Bank,** | § | |
| **Tennessee, and in his individual capacity,** | § | |
| | § | |
| **"INTERIM" CHIEF OF POLICE** | § | |
| **DAN KNIGHT,** | § | |
| **In his official capacity as an agent and** | § | |
| **Chief of Police for the City of Red Bank,** | § | |
| **Tennessee, and in his individual capacity,** | § | |
| | § | |
| **CITY MANAGER CHRIS DORSEY,** | § | |
| **In his official capacity as an agent and** | § | |
| **City Manager for the City of Red Bank,** | § | |
| **Tennessee, and in his individual capacity,** | § | |
| | § | |
| **Defendants.** | § | |

## AMENDED COMPLAINT

**Introduction:**

    1.    This is an action for money damages brought pursuant to 42 U.S.C. §§

1983 and 1988 to redress the deprivation of rights secured to the plaintiff by the First and

Fourteenth Amendments to the United States Constitution, the Tennessee Human Rights Act and the commons laws of the State of Tennessee by the defendants.

2.      Plaintiff avers that the individually named agents of the City of Red Bank, Tennessee ("City") deprived plaintiff of his First Amendment rights without the due process of law.

3.      Plaintiff avers that the individually named agents violated the plaintiff's rights to Due Process of law and Equal Protection of Law.

4.      In addition, plaintiff avers that the individually named agents subjected plaintiff to defamation, humiliation, and mental anguish.

5.      In addition, plaintiff avers Defendant Joe Glasscock ("Glasscock") committed an assault upon plaintiff's person.

6.       Plaintiff also maintains that the individually named agents committed these violations and torts as a result of policies, customs, and/or procedures of the City.

**Jurisdiction and Venue:**

7.      This is an action to redress the deprivation of rights secured to the plaintiff by the First and Fourteenth Amendments to the United States Constitution and of Equal Protection under the same constitution. Thus, this Court is vested with original jurisdiction under 28 U.S.C. §§ 1331 and 1343.

8.      Plaintiff invokes supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 and *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966) over the Plaintiff's cause of action under the constitutional, common law, and statutory laws of the State of Tennessee in that the said laws form the same case or controversy.

~ 2 ~

9.      Venue is proper in this Court, Chattanooga Division, pursuant to 28

U.S.C. § 1391(B). All acts complained of occurred within Hamilton County, a political

sub-division of the State of Tennessee, and physically located within the fourteen county

district of this Court.

   a.  Plaintiff is a resident of Hamilton County, Tennessee.

   b.  To the best of plaintiff's knowledge and belief, the individually named

agents are residents of Hamilton County, Tennessee.

   c.   The City is a political sub-division of the State of Tennessee located in

Hamilton County, Tennessee.

**The Parties:**

10.      At all times relevant to this cause of action, plaintiff was a "member" of

the Red Bank Police Department ("Department").

11.      At all times relevant to this cause of action, plaintiff was an employee of

the City as defined under TENN. CODE ANN. § 29-30-102(b).

12.      At all times relevant to this cause of action, the City is a political sub-

divisions of the State of Tennessee organized and existing under the laws of the State of

Tennessee.

   a.      The City finances its department and is required to provide rules

and regulations for the operation of the department pursuant to TENN. CODE ANN.

§ 6-54-123.

   b.      The City is required to provide oversight of the discipline actions

of the supervisory personnel of the department and to provide a forum for appeals

of employment discipline against individual employees of the department.

~ 3 ~

c.      The City is required to ensure members of its Department are free from an abusive and hostile work place; from retaliation and intimidation for disclosing, investigating, and reporting the misconduct of other members of the department and the City government.

13.     At all times relevant to this cause of action, the City is responsible for the creation and maintenance of the department, which is a law enforcement agency created under Tennessee state law and regulated by the laws of the State of Tennessee.

14.     At all times relevant to this cause of action, the individually named agents were employed by the City and acted under the color of law, statute, ordinance, regulation, custom, or usage. In addition:

a.      At all times relevant to this cause of action Defendant Larry Sneed ("Sneed"), acted in his official capacity as the personal representative of the City as the Chief of Police responsible for the administrative and operational oversight of the department. Sneed acted in his official and individual capacities in the misconduct herein described. Plaintiff sues this defendant in his individual and official capacities.

b.      At all times relevant to this cause of action Defendant Joe Glasscock ("Glasscock"), acted in his official and individual capacities as the personal representative of the City as an elected City Mayor responsible for the decision making on policies and procedures of the City and the department. Plaintiff sues this defendant in his individual and official capacities.

c.      At all times relevant to this cause of action Defendant Dan Knight ("Knight"), acted in his official and individual capacities as the personal

~ 4 ~

representative of the City as the "interim" Chief of Police responsible for the administrative and operational oversight of the department. Knight acted in his official and individual capacities in the misconduct herein described. Plaintiff sues this defendant in his individual and official capacities.

   d. At all times relevant to this cause of action Defendant Chris Dorsey ("Dorsey"), acted in his official and individual capacities as the personal representative of the City as an appointed City Manager responsible for the final decision making on policies and procedures of the City and the department, to ensure oversight of the department heads, to ensure that members of the Department do not suffer retaliation or intimidation for the performance of their duties to expose misconduct of other members of the Department. Plaintiff sues this defendant in his individual and official capacities.

**Factual Basis of Complaint:**

***Murray Incident:***

   15. On April 3, 2010, Department officer TAMMIE DELASHMITT ("Delashmitt") conducted an illegal traffic stop of JOHN ANTHONY MURRAY ("Murray") while in her marked City police car, and outside of the jurisdiction of the City.

   16. Delashmitt conducted the traffic stop in the corporate limits of the City of Soddy-Daisy, Tennessee.

   17. Delashmitt had no lawful authority to conduct the traffic stop.

   18. Delashmitt called her husband, JIM DELASHMITT ("husband") on her cell phone.

~ 5 ~

19.     Husband was a deputy with the Hamilton County Sheriff.

20.     Delashmitt requested husband to "assist" in the traffic stop.

21.     Husband conducted a DUI investigation of Murray and seized Murray and placed Murray into his Hamilton County Sheriff's Department patrol vehicle.

22.     Husband's supervisor, SGT. BRIAN McDOWELL ("McDowell") notified husband that husband could not arrest Murray, and husband released Murray.

23.     Delashmitt uses her police radio, and stated, "show me one in custody."

24.     Delashmitt takes Murray to the Red Bank police station.

25.     Delashmitt makes a police report that she stopped Murray out of jurisdiction and conducted the DUI investigation and arrested Murray.

26.     Red Bank Officers REBECCA CHAUNCY ("Chauncy") and IKE COOPER ("Cooper") saw what Delashmitt was doing and told her to stop.

27.     Department policy is that City police cannot book an arrestee into the Hamilton County jail without a magistrate's endorsement on an arrest warrant.

28.     Chauncy called the duty magistrate at the jail, BOB DAVIS ("Davis"), who declined to sign an arrest warrant based upon the facts.

29.     Chauncy contacted City Judge JOHNNY HOUSTON ("Houston") for advice on how to proceed with the arrest of Murray in order to get Murray booked into the jail.

30.     At no time did any member of the Department contact the city attorney for legal advice on the arrest.

31.     Houston advised the officers to make the arrest a "citizen's arrest."

~ 6 ~

32.     Delashmitt held Murray at the Red Bank City holding cell from nearly eight hours before booking him into the jail at about 10:00 p.m.

33.     Delashmitt created official police documents to change the report from an arrest to incident report titles "assist other agency."

34.     The first report, as stated in ¶ 25 was deleted from the police report data base.

35.     The husband made a sheriff's department report to support his wife's conduct in the illegal arrest at about the same time Murray was booked. This report was not at the time of the arrest. Rather, at the time his wife took Murray to the jail. This was the only way Davis would agree to allow Murray to be lodged at the jail.

36.     Murray eventually was convicted in the Hamilton County Court of General Sessions for DUI under docket number 1393630, not in Red Bank City Court.

37.     Plaintiff complained to Sneed about the actions of Delashmitt and the manner in which police reports were deleted, altered, and written to justify the arrest of Murray.

38.     Sneed did not act on the complaint by plaintiff until plaintiff tendered his resignation to Sneed.

39.     Sneed did not take any action to discipline Delashmitt beyond a verbal reprimand; failed to correct the unlawful arrest and conviction of Murray; failed to address the tampering of police records; and failed to take measures such conduct did not reoccur.

*Lamance Incident:*

~ 7 ~

40.     Sometime in June 2010, LT. JAY LaMANCE ("LaMance"), a Red Bank police officer, was involved in a crash in a City police car.

42.     Department policy was, at the time, whenever a City employee is involved in a crash while operating a City vehicle: [1] An outside police agency would investigate collision; [2] The employee will take a blood test.

    a.    The "Department" policy is in addition to a "City" written policy that contradicts or otherwise confuses when and under what circumstances a City employee must take a drug test and an outside police agency conduct the crash investigation.

    b.    Sneed and the City have not implemented the competing policies evenly.

    c.    During plaintiff's full-time employment with the City and a police officer, he was involved in a collision that resulted in minor damage.

    d.    Plaintiff notified Corporal Nick Dewey, who in turn contacted LaMance.

    e.    LaMance directed plaintiff take a drug test and for the Tennessee Highway Patrol to investigate the crash.

    f.    Officer STEVEN MEADOR was involved in a minor collision when he backed into a dumpster.

    g.    Ray directed Meador to take a drug test and requested the Hamilton County Sheriff's Department to investigate the collision.

~ 8 ~

44.     Sneed directed SGT. MICHAEL RAY ("Ray") to handle the crash investigation, and no blood test of LaMance occurred.

45.     Plaintiff and other officers of the Department began a series of complaints about the two incidents, and the manner in which Sneed led the Department to members of City Council GREG JONES ("Jones"), and FLOY PIERCE ("Pierce") and defendant City Manager Dorsey.

46.     Plaintiff worked third shift in order to continue to work his second occupation in computers.

47.     Plaintiff had a clean record, including a commendation from Detective Tom Tomisek of the Chattanooga Police Department, and a lifesaving commendation from defendant Glasscock.

48.     Sneed directed plaintiff to change shifts to work directly under Ray in order to ensure plaintiff was "better supervised."

49.     This shift change prevented plaintiff from working his second occupation.

50.     Dorsey overruled Sneed's attempt to change plaintiff's shift for it would have subjected plaintiff to retaliation by Sneed through Ray, and was retaliation and punishment for plaintiff's disclosure and complaints of the misconduct stated herein.

51.     Sneed then changed the supervisors – from plaintiff's supervisor Stephen Satterwhite to Ray. Dorsey overruled Sneed's actions after Dorsey terminated Sneed.

52.     Dorsey fired Sneed the following Friday.

***Glasscock Incident:***

53.     Plaintiff attended the City Council meeting after Sneed's termination.

~ 9 ~

54. Plaintiff spoke to Glasscock in the parking lot of the City Hall after the meeting about Glasscock's public comments about "disgruntled underlings."

55. Glasscock became angered, yelled at plaintiff and grabbed plaintiff's arm and poked plaintiff in the chest.

56. Glasscock told plaintiff that he should have come to him about Sneed rather than to Dorsey and other members of council

57. Plaintiff replied he felt he could not approach Glasscock because Glasscock supported Sneed.

58. Plaintiff's response further angered Glasscock, and Glasscock increased his diatribe against plaintiff and physical and unwanted contact on plaintiff's person.

59. Thereafter, Defendant Knight began a series of shift changes of those officers who made complaints to the aforesaid councilmembers and Dorsey.

60. Knight changed plaintiff's shift from third to second and under the supervision of Ray.

61. Dorsey allowed the actions of ¶¶ 60 and 61 to happen.

62. City policy allows an employee to take up to 90 days of unpaid leave without a change of position and terms of employment.

63. Plaintiff asked Dorsey for 60 days of leave after Knight assigned plaintiff to work second shift under Ray – a person whom plaintiff complained about.

64. Knight approved plaintiff's leave request and directed plaintiff to turn in his badge, credentials, service weapon and all other police equipment and plaintiff's police car, but required plaintiff to continue to perform and function as a police officer

~ 10 ~

under the City's policies, despite the fact the City allowed plaintiff to work as a police officer for three days after the City approved plaintiff's leave request.

65.    Knight directed plaintiff to report to "the Chief" before he returned to work from his leave to determine if plaintiff should undergo an evaluation for fitness to return to duty.

66.    Dorsey ratified and approved of Knight's actions, and these actions constituted an adverse employment action and change of the terms and conditions of plaintiff's employment without a Due Process hearing on this change.

**1. Violations of Civil Rights Under Color of Law 42 U.S.C. §1983:**

67.    Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the plaintiff reasserts and incorporates ¶¶ 1 through 67.

68.    The agents acted under color of law, and at the time of such occurrence, acting by virtue of or under color of the office, and their negligence and intentional acts deprived the plaintiff his rights secured to him under the United States and Tennessee Constitutions as follows:

       a.    Procedural Due Process;

       b.    Equal Protection of law;

       c.    Freedom of Speech.

69.    Defendants Sneed, Dorsey, Glasscock, and Knight's actions and omissions in their direct involvement constituted ratification and approval of their joint and unlawful actions.

70.    City has a policy practice, or custom to improperly investigate employee complaints of a hostile work environment, reports of police corruption, and police

~ 11 ~

criminal conduct. This failure constitutes a policy, practice, or custom of deliberate indifference. The direct involvement of Sneed, Dorsey, Glasscock, and Knight reveals this as a policy practice, or custom of the City as these defendants are the highest level of policy-makers for the City.

71.     The City has a policy, practice, or custom to tolerate the abuse of employees who complain or otherwise attempt to assert rights by its employees to proper process to appeal their disciplinary actions. This failure constitutes a policy, practice, or custom of deliberate indifference. The direct involvement of Sneed, Dorsey, Glasscock, and Knight reveals this as a policy practice, or custom of the City as these defendants are the highest level of policy-makers for the City.

72.     The City has a policy, practice, or custom to fail to investigate allegations of police misconduct.

73.     Consequently, the actions stated in this complaint created an environment that allowed the individual defendant agents, and the other named persons in this Complaint to believe that their abusive behavior would not be properly monitored, investigated, nor punished, and that any employee who reported such misconduct would suffer retaliation, both insidious and overt, all of which also constitutes deliberate indifference to the welfare of plaintiff and the public at large.

74.     Plaintiff avers that such actions and omissions on the part of all the defendants constitutes a conspiracy violation of this law and were done to deprive the Plaintiff of the following rights established under the United States Constitution:

       a.     The right not to be deprived of life, liberty, or property without Due Process as secured to him by the Fourteenth Amendment;

~ 12 ~

b.     Equal Protection of Law;

c.     Freedom of Speech in that the City took actions against plaintiff to silence his reports of police corruption and misconduct, to label plaintiff as a misfit and disgruntled, and to cover-up the misconduct in the eyes of the press and prevent civil liability for the unlawful actions involving Murray.

75.     The actions of the individual defendants and the City were done with actual malice toward the plaintiff and with willful and wanton indifference to and with deliberate disregard for the constitutional rights and statutory civil rights of the plaintiff. Thus the plaintiff is entitled to punitive damages, actual damages, and attorney fees pursuant to 42. U.S.C. § 1988.

76.     The City had a duty of care to the plaintiff to ensure that is agents were properly trained in the administration of discipline, to include "*Loudermilk*" hearings, and to provide plaintiff a fair and unbiased mechanism in which to address grievances. This failure constitutes a policy, practice, or custom of deliberate indifference.

**2. State Law Claims:**

77.     The acts and omissions of the defendants as stated in this Complaint were outrageous, designed to humiliate the plaintiff, and resulted in plaintiff's humiliation, mental anguish, and need to seek a leave of absence.

78.     The acts and omissions of defendants constituted violations of TENN. CODE ANN. § 4-21-701 in that the defendants engaged in harassment of plaintiff for plaintiff's attempts to take action against the misconduct of Sneed, Delashmitt, LaMance, and Ray.

~ 13 ~

79.     The acts and omissions of defendants constituted defamation that subjected plaintiff to humiliation in the eyes of his fellow employees, and members of the public, and to "black-ball" plaintiff in any other employment as a police officer.

80.     The acts and omissions of defendants constituted intentional infliction of emotional distress, tort of outrage, civil conspiracy, negligent retention of Delashmitt, retaliatory discharge, and violation of the Tennessee "Sunshine" Act.

81.     The acts of Glasscock constituted the torts of assault and battery.

82.     Plaintiff sues the defendants Sneed, Dorsey, Glasscock, and Knight in their individual and official capacities.

WHEREFORE, the Plaintiff demands judgment against the Defendants and requests the following relief:

A.     That the Defendants be served a copy of this Complaint and be required to answer as required by the Federal Rules of Civil Procedure;

B.     That the Court award compensatory damages, and damages for mental anguish in the amount of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00) and punitive damages in the amount of ONE MILLION DOLLARS ($1,000,000.00);

C.     That the Court award attorney's fees under 42 U.S.C. § 1988;

D.     That the Court award costs, and discretionary costs;

E.     Any other relief the Court may deem fit and proper; and

G.     Allow a jury trial on all issues triable by jury.

Respectfully submitted,

~ 14 ~

**BY: s/ Robin Ruben Flores**
**ROBIN RUBEN FLORES**
TENN. BPR #20751
GA. STATE BAR #200745
Attorney for Plaintiff
4110 – A Brainerd Road
Chattanooga, TN  37411
423 / 267-1575
robinflores@comcast.net

Certificate of Service

I certify I have delivered a copy of this amended complaint to the defendants as follows
via US Mail, postage pre-paid to:

1.      City of Red Bank c/o Chris Dorsey 3117 Dayton Blvd. Red *Bank*, *TN* 37415;

2.      Chris Dorsey 3117 Dayton Blvd. Red *Bank*, *TN* 37415;

3.      Dan Knight, 3117 Dayton Blvd. Red *Bank*, *TN* 37415; and

4.      Larry Sneed, c/o Lee Davis Esq., 508 E. 5th Street, Chattanooga, Tn 37403

August 9, 2010                                    s/ Robin Ruben Flores

~ 15 ~